OPINION
David White is appealing his conviction and sentence on one count of domestic violence. White was convicted after a trial to a jury in the Dayton Municipal Court. The charged victim in this case is Geneva Ramey, the mother of David's child, Anthony Hamilton. Anthony is the result of the relationship between Ramey and White some eleven or twelve years ago. They were not married to each other then, and since then both have married other persons. In recent years, visitation of Anthony with his father, David, was resumed, and the incident which led to the basis for the charge against David occurred on October 2, 1998, when Ramey brought Anthony in her van to the parking lot of a certain McDonald's restaurant, which was the location agreed to for delivering Anthony to his father for a weekend visitation. David was waiting in his car at the McDonald's when Ramey arrived, and Anthony got out of her van and walked over to his father's car where David was sitting in the driver's seat. Ramey testified at the trial as to what happened next, as follows:
 I seen Anthony getting a little upset. I couldn't hear what they were saying.
 Then I seen him come running back towards the van.
 Q. Let me stop you. Was your window up or down, at the time?
A. Down.
 Q. Could you hear what they were saying to each other?
 A. Not exactly, but I did hear a little bit. I heard him say he needed to get in his car. David told Anthony, "Get in the car. Let's go."
 Q. How long was Anthony at Mr. White's vehicle, before he came back to the van?
A. Just a few seconds.
Q. What did you see and hear?
 A. I seen Anthony turn to run away. I seen David get out of his car and reach towards him, like he was going to touch him or something.
 Q. Anthony came and got in the van, rolled up the window, and locked the door.
A. Then what happened?
 Q. He was crying and upset. David came over to Anthony's window. He tried to talk to Anthony. Anthony wouldn't listen to him.
 He came over to my window, on the driver's side. He started talking kind of a little mean. He said he needed Anthony to go with him. He didn't want to argue and fight.
 I said, "Well, give me a minute and let me talk to him."
 He got very upset. He started cussing at me. He said that I was not going to do this to him.
 He said that if I didn't let him have Anthony that he was going to beat my fucking ass.
 Q. Was your window all of the way down or part of the way down?
 A. It was not all the way down, but like this far from being all the way down.
 Q. So about four or five inches of the window was still up?
A. Yes.
* * *
 Q. So Mr. White says that he is going to beat your fucking ass. What did you take that to mean?
A. I thought he was going to hurt me.
Q. Why did you think that?
A. I had never seen him act like that before.
 Q. Had Mr. White ever said anything like that, to you, before?
A. No.
 Q. So he makes this statement to you, and what do you do?
 A. I didn't know exactly what to do. I went to leave because I didn't want to stay. When I put my van in gear and went to leave, he started banging on the side of the van.
 I stopped the van, to see exactly where he was because I didn't want to run over him.
 He started screaming at me, some more, and calling me all kinds of names. He called me a bitch and was just yelling.
 When I realized where he was, I kind of stepped on the gas a little bit and took off.
Tr. 9 — 12.
Anthony, age eleven, also testified at the trial, and he essentially corroborates his mother's testimony. There was also evidence that Ramey was cussing back at David before she drove off. David testified and essentially denied everything about cussing or threats to Ramey. Tr. 58 — 61 — 63. White's Rule 29 motion at the conclusion of the State's evidence was overruled and again when White rested his case, when the court said: "We will let the jury decide this." Tr. 65. After the jury returned a verdict of guilty, White's motion for judgment notwithstanding the verdict on the grounds of insufficient evidence was denied. Tr. 76. White brings to us the following two assignments of error in this appeal:
 1. THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR BY PROCEEDING ON A DEFECTIVE COMPLAINT WHICH MISSTATED THE CHARGING STATUTE AND BY GIVING THE JURY A MISLEADING INSTRUCTION BASED ON THE DEFECTIVE COMPLAINT; THEREBY DENYING THE DEFENDANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND TO BE INFORMED OF THE NATURE OF THE ACCUSATION AGAINST HIM.
 2. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO GRANT APPELLANT'S MOTIONS FOR ACQUITTAL UNDER RULE 29 AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE THE EVIDENCE WAS INSUFFICIENT TO PROVE ALL ELEMENTS OF THE CRIME OF DOMESTIC VIOLENCE (2919.25(C)). SPECIFICALLY, THAT THERE WAS NOT SUFFICIENT EVIDENCE TO ESTABLISH A REASONABLE BELIEF ON THE PART OF GENEVA RAMEY THAT THE DEFENDANT WOULD CAUSE HER IMMINENT PHYSICAL HARM.
In his first assignment, White is complaining that both the complaint against him and the court's charge to the jury did not track the exact language of the domestic violence statute, R.C.2919.25(C), a fourth degree misdemeanor, which reads:
 (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member. (Emphasis added).
The charging instrument was a Complaint which stated:
 He did unlawfully, by threat of force, cause a family or household member, to wit: Geneva B. Ramey, to believe that the offender would cause imminent physical harm to her or other family or household member.
 The jury instructions carried forward the language of the complaint.
 The defendant was charged with Domestic Violence, in that he did unlawfully and knowingly, by threat of force, cause a family member or household member; to wit: Geneva Ramey to believe that the offender would cause imminent physical harm to her or other family member or household member. (Tr. p. 68) (Emphasis added).
White is complaining that in both the complaint and the jury charge, the domestic violence could be aimed at either the victim named in the complaint and in the instruction, Geneva B. Ramey, or against another family or household member. White candidly admits that this alleged error was not brought to the trial court's attention at anytime, and therefore we can consider it only if it meets the criteria of plain error. Statev. Williford (1990), 49 Ohio St.3d 247, 251. This court has addressed the issue of plain error and jury instructions inState v. Tolliver (Dec. 13, 1996), Montgomery App. No. 15184, unreported, as follows:
 "If appellate courts did not exercise the utmost caution in finding plain error, the result would be that whenever defense counsel observes the trial judge making a mistake, such as in the giving of instructions, the temptation would be not to bring the matter to the attention of the trial judge, so that it might be remedied, but to let the case be submitted to the jury with the incorrect instruction. Then, if the defendant is acquitted, well and good. If, however, the defendant should be convicted, then the defense can play its "get out of jail free" card, and obtain a new trial. That is the reason why plain error should be found under the most exceptional circumstances, to prevent manifest miscarriage of justice."
The appellant has not demonstrated any confusion on the part of the defense stemming from the slight rewording of the charge in the complaint and the jury instruction. Ramey was specifically named in both instances, and there was no question at any time during the proceedings that she was the alleged victim. We do not see any way in which the result of the trial would have been otherwise if the statute had been tracked word for word, and in the absence of such a determination, we cannot find plain error. State v. Underwood (1983), Ohio St.3d 12, syllabus.
The first assignment of error is overruled.
The second assignment of error is stated in terms of an insufficiency of the evidence to prove an element of the crime, to-wit: "that there was not sufficient evidence to establish a reasonable belief on the part of Geneva Ramey that the defendant would cause her imminent physical harm," second assignment of error. In the statement of the issue presented, however, White's counsel in his brief states that the issue raised by the second assignment of error is: "Was the verdict against the manifest weight of the evidence?" Appellant's brief, 5. Giving the appellant the benefit of the doubt, we will examine the issue on both the weight and the sufficiency of the evidence. As we stated in Fairborn v. Boles (May 15, 1998), Greene App. No. 97 CA 110, unreported, as follows:
 This court has recently considered the difference between these two standards and exhaustively analyzed them in State v. Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, unreported. We will not repeat the analysis here, but only its conclusions, to-wit: (1) when reviewing the sufficiency of the evidence to support a criminal conviction an appellate court must examine the evidence admitted at trial to determine whether such evidence if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, syllabus 2. (2) But in analyzing the weight of the evidence, the appellate court can exercise a slightly broader standard and assess, to a limited degree, the believability of the evidence presented. This standard allows the reviewing court to judge the credibility of opposing opinion testimony but not of fact testimony, unless it is so incredible that it defies belief.
We are satisfied that the conviction before us passes both tests. The State obviously presented sufficient evidence to support a conviction. The direct testimony of Ramey that she was frightened and scared that David was going to attack her physically is sufficient to support that particular element of the charge. The jury obviously believed her as against David, and we cannot say that it erred in accepting that her belief was reasonable under the circumstances. Clearly, this evidence was sufficient to support the criminal conviction.
As to the manifest weight of the evidence, we have here another classic case of a trier of fact being forced to choose between two conflicting sets of testimony, and the issue is clearly one of credibility of the witnesses. As we have said before, we will not disturb the choice made by the trier of fact between witnesses and their conflicting testimony unless it is so incredible that it defies belief, and we did not find it that incredible here. See, e.g., Boles, id., and City of Dayton v.Versic (Mar. 15, 1996), Montgomery App. No. 15223, unreported. We will give deference to the findings and conclusions of the trier of fact, where there exists competent and credible evidence supporting the findings and conclusions of the finder of fact.Myers v. Garrison (1993), 66 Ohio St.3d 610, 614. Screaming obscenities and threatening at close physical proximity to "whip your f___ing ass" have been held sufficient to support a conviction for domestic violence. Hamilton v. Roberson (Dec. 7, 1998), Butler App. No. CA98-03-045, unreported.
The second assignment of error is overruled, and the judgment is affirmed.
WOLFF, J. and FAIN, J., concur.